**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**EVEREST MANAGEMENT CORPORATION et al., Defendants.**

**No. 71 Civ. 4932 (DNE).**

United States District Court,
S. D. New York.

Jan. 30, 1979.

---

Robert M. Laprade, Lester Green, S. E. C., Washington, D. C., for plaintiff.

Robert S. Persky, pro se.

## OPINION AND ORDER

EDELSTEIN, Chief Judge:

### Background

This is a civil action. Plaintiff Securities and Exchange Commission (hereinafter SEC or Commission) alleges by its complaint, filed on November 11, 1971, that forty-four individual and corporate defend-

ants have violated the securities laws [1] and thus seeks permanent injunctive relief against them to protect the public from future violations.[2] Robert S. Persky (hereinafter Persky), a defendant in this action, is charged with engaging in a series of fraudulent acts involving defendant Microthermal Applications, Inc. (hereinafter Microthermal). Persky is an attorney who served as secretary of and counsel to Microthermal.

On March 1, 1973 Persky was indicted, along with other defendants in this action, for violating the federal securities laws. *United States v. Zane, Silverman and Persky et al.*, 73 Crim. 192 (S.D.N.Y. March 1, 1973). Persky was named in Counts One, Two, Four and Five of the twelve count indictment and charged with conspiring to file and filing a false Form 10–K annual report for Microthermal, failing to file a Form 8–K current report for Microthermal, and fraud in connection with the purchase and sale of Microthermal stock. A jury trial held in May and June of 1973 resulted in Persky's conviction on Count Two (filing a false annual report) and an acquittal on Count One (conspiring to file a false annual report).[3] In a second jury trial conducted in January 1975 Persky was convicted on Count Four (fraud in connection with the purchase and sale of stock) after Count Five (failure to file a required current report) was dismissed by the court. Persky's convictions on Counts Two and Four were affirmed by the Second Circuit Court of Appeals in two separate opinions. *United States v. Zane*, 495 F.2d 683 (2d Cir.) *cert. denied*, 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974); *United States v. Persky*, 520 F.2d 283 (2d Cir. 1975). During the pendency of these criminal actions no steps

were taken by the SEC to advance this civil suit as against Persky; temporary or preliminary injunctive relief was not sought.

This opinion and order is directly occasioned by a series of motions filed by defendant Persky and the SEC. On October 24, 1977 Persky moved this court for an order of involuntary dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The SEC opposed such a dismissal and on November 17, 1977 asked the court to defer "the consideration of . . . Persky's Motion to Dismiss, to a subsequent time . . . in order that the Court may consider defendant Persky's motion in conjunction with a forthcoming motion for summary judgment, to be filed by plaintiff Commission." A motion for summary judgment was noticed by the SEC on January 11, 1978.

In the interest of tidy judicial administration the court has deferred consideration of Persky's motion for an order of involuntary dismissal pending receipt of the SEC's motion for summary judgment. For the reasons set forth below, defendant's motion is denied and the plaintiff's motion for summary judgment is granted.

*Persky's Motion to Dismiss for Failure to Prosecute*

Defendant Persky seeks an order of involuntary dismissal pursuant to Rule 41(b), Fed.R.Civ.P.,[4] for failure of the plaintiff Commission to prosecute this action. The thrust of Persky's argument is the passage of time; almost six years passed from the filing of the complaint until Persky moved for a dismissal. During that time, the SEC took no steps to prosecute its claims against Persky. Additionally, Persky alleges that

---

1. Those Acts alleged to have been violated are the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, and the Investment Advisers Act of 1940.

2. As of the date of this opinion and order the SEC has obtained 26 consent injunctions the last of which was entered on July 6, 1977.

3. Counts Four and Five, the other counts in the indictment naming Persky, had been severed for trial at a later date at the insistence of two defendants not named in those counts.

4. Rule 41(b) of the Federal Rules of Civil Procedure states in pertinent part:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.

the injunctive relief sought by the Commission would serve no useful purpose since all the complained of acts were terminated prior to the filing of this action and future violations are unlikely.

The Commission advances a number of arguments in opposition to Persky's motion. First, the SEC emphasizes that Persky has not been prejudiced by the passage of time. Second, Persky's failure to raise the issue of delay at an earlier point in time, the Commission maintains, is a relevant factor for the court's consideration. Finally, the SEC argues that injunctive relief is necessary because there exists a reasonable likelihood that Persky will violate the securities laws in the future.

■ This court is vested with broad discretion in determining whether to dismiss an action under Rule 41(b), Fed.R. Civ.P., for failure to prosecute. *E. g., Ali v. A & G Co.*, 542 F.2d 595, 596 (2d Cir. 1976); *Joseph Muller Corporation Zurich v. Societe Anonyme De Gerance Et D'Armement*, 508 F.2d 814, 815 (2d Cir. 1974). No one standard or single factor controls a court's determination under Rule 41(b); each case must be examined in its own factual circumstances. *See Michelsen v. Moore-McCormack Lines, Inc.*, 429 F.2d 394, 395 (2d Cir. 1970) (*per curiam*); 5 *Moore's Federal Practice* ¶ 41.11[2] at 41–125 (2d Ed. 1978). In reaching its conclusion, a court may balance the strong public policy in favor of deciding cases on the merits with the burden on the administration of justice and prejudice to the defendant caused by the delay. *See Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1193 (8th Cir. 1976); *Reizakis v. Loy,* 490 F.2d 1132, 1135 (4th Cir. 1974).

■ Defendant Persky has alleged no prejudice resulting from the Commission's delay in prosecuting this action, not even the usual prejudices caused by the passage of time such as failing memories or the unavailability of witnesses. Although Persky's lack of prejudice is not dispositive of his motion to dismiss, it is a permissible and relevant factor for the court's consideration. *See Messenger v. United States*, 231 F.2d 328, 331 (2d Cir. 1956); *Saylor v. Lindsley*, 71 F.R.D. 380, 384 (S.D.N.Y.1976).

■ Defendant Persky's failure to bring to the court's attention the SEC's delay in prosecuting this action also merits close scrutiny. In cases where proper service is made, as was done in this action, "the correct rule is that the failure of a defendant to call the court's attention to a plaintiff's undue delay in bringing a case on for trial, by formal motion or otherwise, may be considered as a factor in informing the court's discretion." *Finley v. Parvin/Dohrmann Co.*, 520 F.2d 386, 392 (2d Cir. 1975). Throughout an almost six year period dating from the filing of the complaint until Persky moved for a dismissal in 1977, Persky chose not to raise the issue of plaintiff's delay; his silence over that long period of time is not to be ignored.

■ In weighing the merits of Persky's motion to dismiss, this court also considers the reasons, if any, for the dilatory prosecution of this action. While proffering no express excuse for the long delay in prosecuting this action, the SEC explains that it "decided to proceed with [this] civil action only as to those defendants who might not be implicated in the criminal aspects of the . . . case."[5] That decision, in the court's opinion, was a rational one which insured both fairness of defendants and a wise use of prosecutorial and judicial resources. Dismissal for want of prosecution may be denied where a satisfactory explanation for plaintiff's delay exists. 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2370 at 213 (1971).

**5.** Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 4. The SEC's decision not to proceed in this action against defendants involved in related and *pending* criminal cases accounts for a substantial portion of the delay in prosecuting this action. For example, the criminal actions involving Persky were not finally terminated until June 1975 when the Second Circuit Court of Appeals affirmed Persky's conviction for fraud in connection with the purchase and sale of Microthermal stock. *United States v. Persky*, 520 F.2d 283 (2d Cir. 1975).

■ As the above discussion reflects, the lack of prejudice suffered by Persky, his failure to bring plaintiff's delay to the court's attention, and the SEC's explanation for the delay, are all relevant factors which inform the exercise of the court's discretion; the passage of time alone does not dictate dismissal of an action for want of prosecution. After considering these factors and the amount of time which has passed since the complaint in this action was filed, the court is convinced that dismissal of this action would not be appropriate. Defendant's motion is therefore denied.

The dispute between Persky and the Commission whether injunctive relief is necessary reaches the ultimate issue of this case and is better addressed in the context of the SEC's motion for summary judgment.

### SEC's Motion for Summary Judgment

· [8–10] A motion for summary judgment is to be granted only if the moving party establishes that "there is no genuine issue as to any material fact and that [he] . . . is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All doubts are to be resolved in favor of the party opposing the motion. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978); *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). Summary judgment can be granted, on appropriate facts, in suits for injunctive relief brought by the SEC. *E. g., SEC v. Research Automation Corp., supra*; 6 Pt. 2 *Moore's Federal Practice* ¶ 56.17[54] at 56–1054 (2d Ed. 1976) (citing cases). However, where issues of fact remain concerning either the existence and nature of past violations or the reasonable likelihood of future violations, injunctive relief will not be granted upon motion for summary judg-

ment. *Great Western Land & Development, Inc. v. SEC*, 355 F.2d 918 (9th Cir. 1966); *SEC v. First Guardian Securities Corp.*, 95 F.Supp. 580 (S.D.N.Y.1950). See *SEC v. Koracorp Industries, Inc.*, 575 F.2d 692 (9th Cir.) *cert. denied*, —— U.S. ——, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

In support of its motion for summary judgment the Commission argues that Persky's two criminal convictions remove all factual issues concerning the fraudulent conduct alleged in the complaint and also resolve any question concerning the likelihood of future violations. Defendant Persky contends that his two criminal convictions do not establish civil liability for purposes of this suit and that in any event injunctive relief is unnecessary. Each of these two issues—the preclusive effect of the criminal convictions and the present necessity for injunctive relief—will be separately analyzed.

### A. Persky's Prior Convictions

■ The Commission maintains that Persky is collaterally estopped from denying certain of the allegations contained in the complaint because of his two prior criminal convictions. Because of the higher standard of proof and the numerous safeguards surrounding a criminal trial, a conviction in a criminal action is conclusive in a subsequent civil litigation between the same parties [6] as to issues that were actually litigated and adjudicated in the prior criminal proceeding. See e. g., *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 76 (8th Cir.) *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *United States v. Fabric Garment Co.*, 366 F.2d 530, 534 (2d Cir. 1966); *Brown v. United States*, 524 F.2d 693, 699, 207 Ct.Cl. 768 (1975); 1B *Moore's Federal Practice* ¶ 0.418[1] at 2703 (2d Ed. 1976). As the Supreme Court in

---

**6.** The court considers the United States Attorney's office and the SEC to be the same party in that both represent the United States. Assuming *arguendo* that the U.S. Attorney's office and the SEC are different parties for collateral estoppel purposes, this circuit has indicated that mutuality of parties is no longer essential for the operation of an estoppel, as long as the party against whom the estoppel is asserted, here Persky, was afforded a full and fair opportunity to litigate the identical issue in the prior proceeding. *Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 818–19 (2d Cir. 1977) *aff'd* —— U.S. ——, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Zdanok v. Glidden Co.*, 327 F.2d 944, 954–56 (2d Cir. 1964).

*Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951) stated, "[i]t is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding." 340 U.S. at 568, 71 S.Ct. at 414. Moreover, the working of an estoppel in a subsequent civil proceeding is not frustrated by the fact that the prior criminal conviction was in the form of a general jury verdict. It is the task of the trial judge in the subsequent civil proceeding to determine through an examination of the pleadings, court opinions if any, and the record of the criminal trial which questions were " 'distinctly put in issue and directly determined' in the criminal prosecution." 340 U.S. at 569, 71 S.Ct. at 414.

After a careful examination of the pleadings and the record of Persky's prior two convictions (and especially the detailed appellate court opinions affirming those convictions), the court is convinced that the fraudulent acts alleged against Persky in Counts Thirty-two through Thirty-four of the complaint[7] were resolved against Persky in the prior criminal cases. Briefly, the complaint in this action alleges that Persky engaged in the following series of fraudulent acts in connection with defendant Microthermal. In contravention of a registration statement which provided that proceeds from a public offering would be invested in certificates of deposit, government securities, or other conservative interest bearing obligations, defendant Microthermal through its president defendant Morton S. Kaplan made cloaked transfers of approximately $500,000 to a high risk hedge fund. In an effort to conceal this misappropriation, which left Microthermal practically without funds after the $500,000 had been dissipated, Persky and others arranged to have a false financial statement prepared and certified reflecting the purchase by Microthermal of certificates of deposit in the amount of approximately $500,000. To bol-ster the impression that Microthermal had in fact purchased the certificates of deposit, Persky and others engaged in a fraudulent transaction with a New York bank whereby the bank issued letters and documents which erroneously confirmed that certificates of deposit were purchased for Microthermal in the amount of approximately $500,000. Finally, as a result of these activities and the initial misappropriation and dissipation of the approximately $500,000 by Microthermal, Persky and others filed a false and misleading Form 10–K annual report for the fiscal year ending January 31, 1970. That report stated that Microthermal possessed approximately $500,000 in cash when such an amount did not exist.

The complaint in this action further alleges that in a continuing effort to conceal from the public and the Commission the misappropriation, Persky and others arranged for Microthermal to enter into a transaction with defendant U.S. Secretarial Institute, Ltd. (hereinafter U.S. Secretarial) in which Microthermal exchanged $375,000 of nonexistent certificates of deposit for 49% of the stock of U.S. Secretarial. The sham transaction was meant to create the illusion that Microthermal's certificates of deposit, which did not in fact exist, were transferred for an asset of value—actually worthless shares of U.S. Secretarial stock.

These fraudulent activities, alleged against Persky in this civil action, were "distinctly put in issue and directly determined," *Emich Motors Corp. v. General Motors Corp., supra,* 340 U.S. at 569, 71 S.Ct. at 414, in Persky's two prior criminal convictions. Persky was initially convicted for filing a false and misleading Form 10–K for Microthermal in violation of section 15 of the Securities Exchange Act of 1934, 15 U.S.C. § 78o (1976). The criminal indictment (73 Crim. 192), the record of that case, and the affirming appellate decision, *United States v. Zane,* 495 F.2d 683 (2d Cir. 1974), make clear that Persky's conviction

---

7. Persky's allegedly fraudulent conduct is addressed in Counts Thirty-two through Thirty-five of the civil complaint. For purposes of its summary judgment motion, however, the SEC is not proceeding against Persky as to Count Thirty-five of the complaint (failure to file a required current report) because that count is similar to Count Five of the indictment which was dismissed by the trial judge during Persky's second criminal trial.

rested upon the same fraudulent acts outlined above and alleged in the civil complaint of this action: the attempt by Persky and others to conceal from the public and the Commission the misappropriation of approximately $500,000 of Microthermal's funds. Persky's subsequent criminal conviction for violating section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and SEC Rule 10b–5, concerned in large part [8] the very same transaction—Microthermal's purchase of U.S. Secretarial stock—which is alleged in the civil complaint of this case. *United States v. Persky,* 520 F.2d 283 (2d Cir. 1975). It is far too late in the day for Persky to deny the existence of these violations for purposes of this civil suit.

One argument which defendant Persky raises against the use of his prior convictions, however, deserves detailed discussion. Persky asserts that the SEC cannot rely on his prior two convictions while ignoring the two acquittals Persky obtained in the very same trials. In fact, the SEC has chosen not to ignore Persky's acquittals even though it was entitled to do so.[9] Thus, the SEC argues an estoppel in this case only as to those fraudulent acts alleged in the complaint which resulted in Persky's convictions. For example, the Commission has dropped those allegations contained in Count Thirty-five of the complaint which is similar to Count Five of the criminal indictment (failure to file Form 8–K current report) which was dismissed by the court. (Plaintiff's Memorandum in Support of Mo-

tion for Summary Judgment, at 3 n. 4.) The injunctive relief sought here by the Commission has been carefully tailored to correspond with Persky's prior convictions.[10]

In light of the preclusive effect of Persky's prior convictions, the court has little difficulty concluding that no triable issues of material fact remain concerning those fraudulent acts alleged in the complaint and relied upon by the Commission in support of its motion for summary judgment. It remains to be seen whether the SEC is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(c). *See SEC v. Research Automation Corp., supra,* 585 F.2d at 35.

### B. *Injunctive Relief*

The Commission argues that the nature and extent of Persky's past misconduct, as disclosed on the record of his criminal convictions, mandate the issuance of an injunction to protect the public against the likely possibility of future violations. That Persky, an attorney, knowingly engaged in a series of fraudulent acts leading to two criminal convictions is cited by the Commission as proof positive that future violations are likely to occur. As further evidence of Persky's propensity to violate the securities laws, the Commission refers the court to the case of *Newburger, Loeb & Co. v. Gross,* involving a matter factually unrelated to this action. [1976–1977 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,649 (S.D.N.Y. July 8, 1976), *aff'd in part and rev'd in part,* 563 F.2d 1057 (2d Cir. 1977).[11] In *Newbur-*

---

**8.** That criminal action also addressed other attempts by Persky to merge Microthermal out of existence.

**9.** This is so because an acquittal in a criminal case has no preclusive effect in a subsequent civil case on the same issue due to the higher standard of proof employed in a criminal trial. *See, e. g., One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) *(per curiam); United States v. National Association of Real Estate Boards,* 339 U.S. 485, 493–94, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); *Neaderland v. Commissioner of Internal Revenue,* 424 F.2d 639, 641 (2d Cir.) *cert. denied,* 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970).

**10.** The complaint in this action alleges that Persky violated section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1976), as well as provisions of the Securities Exchange Act of 1934. Because Persky's prior convictions involved the reporting and antifraud provisions of the 1934 Act, the Commission seeks injunctive relief only as to future violations of those sections. It does not request the court to find that Persky violated the Securities Act of 1933.

**11.** Although the Court of Appeals reversed the district court's award of punitive damages and its exercise of jurisdiction over one of the counterclaims involved in the case, it affirmed the district court's conclusion that Persky engaged in conduct "beyond the scope of his honorable employment." 563 F.2d at 1080.

ger Persky was found to have engaged, along with others, in conduct illegal under state law, designed to coerce certain partners into approving the transfer of partnership assets to a newly constituted corporation.

Defendant Persky responds that the SEC's current concern over the possibility of future violations is inconsistent with its failure to seek temporary or preliminary injunctive relief during the long period of time in which this action was pending. Persky emphasizes that all the complained of actions took place prior to the filing of the complaint in 1971 and that no subsequent violations have occurred. The case of *Newburger, Loeb & Co. v. Gross, supra,* is described by Persky as being *sub judice* and of little relevance anyway since it does not involve the securities laws.

■■■■ The respective arguments of the Commission and Persky must be measured against the applicable legal standard in this circuit for the issuance of injunctive relief in actions brought by the SEC. Simply stated, to obtain injunctive relief restraining a defendant from violating the securities laws in the future the SEC must demonstrate that there is a reasonable and realistic likelihood of future violations. *See, e. g., SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 99–100 (2d Cir. 1978); *SEC v. Bausch & Lomb, Inc.,* 565 F.2d 8, 18 (2d Cir. 1977); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir. 1972); 3 L. Loss, *Securities Regulation* 1976 (2d ed. 1961). Although the existence of past violations is often the single most relevant factor in weighing the likelihood of future violations and the corresponding need for injunctive relief, "recent decisions have emphasized, perhaps more than older ones, the need for the SEC to go beyond the mere fact of past violations and demonstrate a realistic likelihood of recurrence." *SEC v. Commonwealth Chemical Securities, Inc., supra,* 574 F.2d at 100.[12] Other factors which are relevant to a court's inquiry into the need for injunctive relief are the isolated or recurrent nature of past violations; the degree of willfulness involved in the past violation; the sincerity of defendant's claims that future violations will not occur; the time which has elapsed since the past violations occurred; and the fact that because of his profession, the defendant faces numerous opportunities to engage in future violations of the securities laws. *SEC v. Commonwealth Chemical Securities, Inc., supra,* 574 F.2d at 100; *SEC v. Universal Major Industries,* 546 F.2d 1044, 1048 (2d Cir. 1976) *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977); *SEC v. Parklane Hosiery,* 422 F.Supp. 477, 486 (S.D.N.Y. 1976), *aff'd,* 558 F.2d 1083 (2d Cir. 1977).

■■■■ Applying these factors to the record in this case, the court is convinced that injunctive relief is necessary. First, Persky's past violations were not isolated transgressions of the securities laws. The record of Persky's two criminal convictions, as well as the opinions of the reviewing courts affirming those convictions, make clear beyond any reasonable doubt that Persky engaged in a series of patently fraudulent transactions designed to cover up Microthermal's misappropriation of approximately $500,000 of shareholders' funds. Second, in light of Persky's prior criminal convictions, this court has no difficulty concluding that Persky *knowingly*[13] violated the securities

---

12. The Second Circuit's most recent treatment of this question suggests perhaps less hesitance to award an injunction to the SEC on the basis of past violations. *SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978) (on motion for summary judgment). Any uncertainty on this point does not trouble the court presently, as the record in this case discloses ample evidence of the need for injunctive relief even under the "more circumspect" approach reflected in *SEC v. Commonwealth Chemical Securities, Inc., supra,* 574 F.2d at 99.

13. The Second Circuit Court of Appeals has recently indicated, in the context of a criminal prosecution for violation of section 10(b) of the Securities Exchange Act of 1934, that the "scienter" requirement for section 10(b) and Rule 10b–5 actions, first applied by the Supreme Court in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) in the context of a private civil 10b–5 action, does not "establish a standard of specific intent to defraud"; all that is required to establish "scienter" in a criminal 10b–5 action,

laws; the purposeful and knowing nature of Persky's past violations does not augur well for the future. Third, as an attorney,[14] Persky will face in the future many situations presenting opportunities for fraudulent conduct in violation of the securities laws. "One who has displayed such frailty in the past and faces so many temptations in the future may well need the admonition of an injunction to obey the law." *SEC v. Shapiro,* 494 F.2d 1301, 1308 (2d Cir. 1974).

In assessing the need for injunctive relief, the court has considered the substantial amount of time which has passed from the filing of the complaint in 1971. As a preliminary point, this court is not deprived of its power to grant injunctive relief simply because the complained of activities have been discontinued. *United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *SEC v. Management Dynamics Inc.,* 515 F.2d 801, 807 (2d Cir. 1975). Moreover, the passage of time from the filing of the complaint in this action until the present has not been uneventful. Aside from the two criminal convictions discussed above, Persky has been subject to strong judicial criticism and been found liable for his conduct in connection with the brokerage firm of Newburger, Loeb & Co. *See Newburger, Loeb & Co. v. Gross,* [1976–1977 Transfer Binder] Sec.L. Rep. (CCH) ¶ 95,649, *supra, aff'd in part and rev'd in part* 563 F.2d 1057 (2d Cir. 1977). Contrary to Persky's claims, no issues remain on remand in *Newburger* concerning the illegal and unethical nature of Persky's conduct; that case is relevant here insofar as it reflects Persky's pronounced tendency to operate outside the recognized bounds of his profession and the law.[15]

Finally, given the SEC's rational decision to await the conclusion of Persky's criminal trials before seeking relief in this civil action, the court is unpersuaded by Persky's argument that the SEC's failure to seek temporary or preliminary injunctive relief is tantamount to an admission by plaintiff that recurrent violations are unlikely.

## Conclusion

After two criminal trials and two convictions, there remains no genuine issue of any

---

and presumably in a civil 10b–5 action, is to prove "knowingly wrongful misconduct". *United States v. Chiarella,* 588 F.2d 1358, 1371 (2d Cir. 1978). Persky's two criminal convictions, upon which the SEC relies in this action, established that Persky's misconduct was of a "knowingly wrongful" nature sufficient to satisfy the "scienter" requirement of *Hochfelder.* Therefore, this court need not address the question left open in *Hochfelder* whether "scienter" must be proven by the SEC in actions for injunctive relief based on section 10(b) violations. *See SEC v. Commonwealth Chemical Securities, Inc., supra,* 574 F.2d at 101–02.

14. After his two criminal convictions Persky was temporarily disbarred (2 years) from practicing law before the New York State courts. Persky has never been barred from practicing in New York's Federal courts. However, Persky's right to practice before the SEC has been suspended. Despite this suspension, the court believes that as an attorney Persky will continue to face situations where the securities laws will be involved and where the admonition of an injunction will prove helpful and necessary.

15. This court is convinced of the propriety of considering the *Newburger* judgment as evidence of the defendant's propensity for continued violation of the securities laws. In *New-*

*burger,* Persky and others were found to have induced and participated in a breach of fiduciary duty under New York partnership law. 563 F.2d at 1080. Acting as an attorney, Persky was found, *inter alia,* to have threatened and initiated baseless litigation, manipulated a settlement in bad faith, and issued a false opinion letter. *Id.* The overall fraudulent quality of Persky's proven behavior in *Newburger* is sufficiently similar to that complained of in this action to be "relevant" as evidence, under the broad standard of Rule 401, Fed.R.Evid., of Persky's propensity to violate the securities laws. Also, Persky's willingness to engage in conduct "beyond the scope of his honorable employment" to achieve his client's ends, revealed so clearly in *Newburger,* cannot be ignored by this court in weighing the need for injunctive relief to deter future violations of the Securities Exchange Act of 1934. Moreover, the facts upon which state law liability was based in *Newburger* were proven in support of counterclaims found by the trial and appellate courts to have been "inextricably intertwined" with plaintiff's claim that defendants had engaged in "churning" of securities in violation of § 10(b) of the Securities Exchange Act of 1934. 563 F.2d at 1071.

material fact concerning the nature and extent of Persky's past misconduct. A reasonable and realistic likelihood exists that Persky will violate sections 10(b) and 15 of the Securities Exchange Act of 1934 in the future unless enjoined. Accordingly, the SEC's motion for summary judgment is granted. Within ten days of the filing of this opinion the SEC shall submit, upon notice, a proposed order of final judgment consistent with this opinion.

SO ORDERED.