John E. PATTERSON, et al., Plaintiffs,

v.

NEWSPAPER AND MAIL DELIVER-
ERS' UNION OF NEW YORK AND VI-
CINITY, et al., Defendants.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

NEWSPAPER AND MAIL DELIVER-
ERS' UNION OF NEW YORK AND VI-
CINITY, et al., Defendants.

Nos. 73 Civ. 3058 (WCC),
73 Civ. 4278 (WCC).
Claim No. 230.

United States District Court,
S.D. New York.

May 1, 1995.

N.A.A.C.P. Legal Defense & Educational Fund, Inc., New York City, for plaintiffs (Elaine R. Jones, Theodore M. Shaw, Charles Stephen Ralston, and Judith Reed, of counsel).

Marks & Murase, New York City, for Tribune New York Holdings, Inc. (Gerald T. Hathaway, of counsel).

WILLIAM C. CONNER, Senior District Judge.

A class of private plaintiffs and the Equal Employment Opportunity Commission ("EEOC") brought two civil rights actions in 1973 against the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU" or "Union") and more than fifty news publishers and distributors within the Union's jurisdiction. Both suits charged that the Union, with the acquiescence of the publishers and distributors, had historically discriminated against minorities, and that the structure of the collective bargaining agreement, combined with nepotism and cronyism, had perpetuated the effects of past discrimination in violation of Title VII of the Civil Rights Act of 1964. Each lawsuit sought an affirmative action program designed to achieve for minorities the status that they would have had in the newspaper delivery industry but for the alleged discriminatory practices.

On September 19, 1974, then-District Judge Lawrence W. Pierce issued an opinion and order approving a settlement between the parties and incorporating the Settlement Agreement in a Consent Decree, familiarity

with which is presumed. *See Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity,* 384 F.Supp. 585 (S.D.N.Y.1974), *aff'd,* 514 F.2d 767 (2d Cir. 1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Settlement Agreement implements an affirmative action program that modifies the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement. Under the Consent Decree, each employer maintains a work force of steady employees, known as regular situation holders, for its minimum delivery needs. To accommodate fluctuations in circulation, the publishers are permitted to supplement their work force with temporary workers, known as daily shapers.

The daily shapers are divided into three groups with descending hiring priorities. Those shapers on the Group I list have first priority, after the regular situation holders, in order of their shop seniority. The next priority belongs to Group II shapers. Group II consists of all persons holding regular situations or Group I positions with other employers in the industry. The last priority belongs to Group III shapers.

The Settlement Agreement also established an Administrator, appointed by the Court, to implement the provisions of the Consent Decree and to supervise its performance. The Settlement Agreement authorizes the Administrator to hear claims concerning race-based discrimination by its signatory employers and violations of the Consent Decree. Appeals from his decisions are heard in this Court.

Because its goals had been reached, the Consent Decree was vacated by a July 8, 1992, Opinion and Order of this Court. *See Patterson v. Newspaper and Mail Deliverers' Union,* 797 F.Supp. 1174 (S.D.N.Y.1992), *aff'd,* 13 F.3d 33 (2d Cir.1993), *cert. de-*

nied, — U.S. ——, 115 S.Ct. 58, 130 L.Ed.2d 16 (1994). However, the Administrator retained jurisdiction over all claims instituted under the Consent Decree before July 29, 1992.[1]

Pursuant to the Consent Decree, Tribune New York Holdings, Inc. ("NY Holdings") seeks review of a determination by Administrator William S. Ellis, Esq. (the "Administrator") denying NY Holdings' motion to dismiss or, in the alternative, to grant summary judgment in the matter denominated "Claim 230." We have reviewed the parties' submissions relied upon by the Administrator, as well as the arguments submitted to the Court by the various parties. For the reasons set forth below, the Administrator's decision is affirmed.

## BACKGROUND

In the spring of 1987, a group of employees at the New York Daily News (the "News" or "Daily News") filed charges of discrimination with the EEOC against the NMDU and their employer.[2] A year later, the Administrator asked the EEOC to produce a list of persons who had filed charges against any of the defendants in the *Patterson* action, and whose claims were pending before the agency. After supplying the list to the Administrator, the EEOC dismissed all of those then-pending charges and issued to each claimant a "Notice of Right to Sue" indicating that the Administrator had assumed jurisdiction of their charges pursuant to the Consent Decree. Although claimants initially opposed his jurisdiction to hear those charges, in 1991 this Court confirmed the Administrator's power to do so. *Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity,* 760 F.Supp. 1087 (S.D.N.Y.1991). Claim 230 consists of the various EEOC charges made by those claimants.[3]

---

1. Our original opinion sustained the Administrator's jurisdiction over claims filed before July 8, 1992. *Id.* at 1185. However, upon reconsideration the cut-off date was extended to July 29, 1992. *See* Judgment of July 29, 1992.

2. At the time claimants filed those charges, NY Holdings was the owner of the Daily News.

3. The claimants that initially filed those charges and received "Notice of Right to Sue" letters from the EEOC are: Robert Harvey, Robert Hatton, Floyd Hollington, Abdullah Khalifa, Jack Lavache, Clifford Magloire, Jose Maldonado, Donald Roberts, Calvin Sandy, William Speights, and Malcolm Stokes.

In September of 1994, NY Holdings moved to dismiss Claim 230 under Rule 41(b), Fed. R.Civ.Pro., on the grounds that claimants, represented by the NAACP Legal Defense and Education Fund, Inc. ("LDF"), had failed diligently to prosecute Claim 230, or in the alternative for summary judgment pursuant to Rule 56(c), Fed.R.Civ.Pro., in light of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). NY Holdings argued, as it does on appeal, that the LDF's initial opposition to the Administrator's jurisdiction to adjudicate these charges, its failure to conduct any discovery in the matter since the claim's inception in 1988, and its half-hearted attempt at settlement demonstrate that the LDF has no intention of prosecuting Claim 230 before the Administrator. In the alternative, it contended that the claimants could not substantiate the discrimination claims that they made in their EEOC charges and, because it raises no material issues of fact for trial, Claim 230 should be dismissed.

After the motion was fully briefed before the Administrator, and without filing a Rule 3(g) statement in response to NY Holdings' summary judgment motion, as required under the local rules of this Court, the LDF submitted over 2000 pages of deposition testimony taken in other related matters and an affidavit citing over 200 pages of the submission, contending, with little explanation, that the testimony therein raised genuine issues of fact for trial. The Administrator, accepting the post-motion submission from the LDF and a response from NY Holdings, declined NY Holdings' invitation to dismiss the action under Rules 41(b) and 56(c). NY Holdings appeals that denial.

## DISCUSSION

The Consent Decree provides the Administrator with broad authority to take all actions that he deems necessary to implement the provisions and to ensure the performance of the Order. Pursuant to his authority, the Administrator has determined that the cir-

cumstances do not warrant dismissal of Claim 230 for failure to prosecute the matter diligently and that there are genuine issues of material fact for trial. Our review of those determinations is somewhat limited.

■ In *Foreman v. Wood, Wire & Metal Lathers Int'l Union, Local No. 46*, 557 F.2d 988, 992 (2d Cir.1977), the Second Circuit noted that the scope of review of an independent administrator appointed to ensure compliance with a settlement decree is similar to that applied to an arbitrator's decision. More recently, in *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d 610, 616 (2d Cir.1990), the Court of Appeals reiterated that an administrator's decision is entitled to "great deference." Thus, it is clear that an administrator's decision cannot be rejected merely because a court may be inclined to reach a different result. *Cf. Burns Int'l Security Services, Inc. v. Int'l Union, United Plant Guard Workers of America (UPGWA) and its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995). ("[I]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed."). We will only overturn the Administrator's holding if his conclusions are completely insupportable on the record before us.

## A. Rule 41(b)

■ Rule 41(b) permits a court, upon motion of a defendant, to dismiss any action that a plaintiff fails to prosecute diligently.[4] A matter of discretion committed to the trial court, the court's consideration of a motion under Rule 41(b) is guided by five factors: 1) the duration of plaintiff's failures; 2) whether plaintiff had received notice that further delays would result in dismissal; 3) whether the defendant is likely to be prejudiced by further delay; 4) a balancing of the need to alleviate court calendar congestion with a party's right to due process; and 5) the efficacy of lesser sanctions. *Alvarez v. Simmons Market Research Bureau Inc.*, 839 F.2d 930, 932 (2d Cir.1988) (citing *Harding v.*

---

4. Rule 41(b) reads:

**Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute ... a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

*Federal Reserve Bank of New York,* 707 F.2d 46, 50 (2d Cir.1983)).

■ NY Holdings argues that while the Administrator properly recognized the above controlling factors, he misapplied them to the facts of this case. It cites the LDF's failure to conduct discovery in the matter for the last seven years and two management changes at the Daily News since NY Holdings served as its publisher, resulting in NY Holdings' inability to locate company records and personnel dating back to alleged events, as the primary factors supporting its motion. In addition, NY Holdings points to repeated admonitions by the Administrator and by this Court to resolve pending claims quickly subsequent to the termination of the Consent Decree in 1992. While we again reemphasize our desire to bring all pending *Patterson* matters to an expeditious conclusion, we acknowledge the deference afforded the Administrator's determinations, and we find sufficient evidence to support his ruling in this case.

■ Regarding the LDF's failure to conduct discovery, we note at the outset that "[p]assage of time alone does not dictate dismissal of an action for want of prosecution." *SEC v. Everest Management Corp.,* 466 F.Supp. 167, 172 (S.D.N.Y.1979). Instead, the proper inquiry is whether plaintiff's delay is excusable. *Id.* at 171 (court should consider reasons for dilatory prosecution in evaluating motion to dismiss). The Administrator points out that from September 1988 through March 1991, the LDF was contesting the jurisdiction of the Administrator to adjudicate the EEOC charges. Pending the outcome of that issue, postponing discovery was perfectly reasonable. From March 1991 until this motion was filed, the Administrator indicates that the parties were involved in good faith settlement negotiations. NY Holdings argues that the negotiations were far more sporadic than the Administrator indicated and were not conducted in good faith. Whether or not we may ultimately agree with NY Holdings, we are not in a position to second guess the Administrator's fact findings. Instead, we must determine whether any part of the record before us supports his findings. Given that the Administrator was in a better position than we are to evaluate the LDF's efforts in resolving Claim 230, we do not believe his findings are unreasonable.

Regarding prejudice suffered by NY Holdings because of the delay, the Administrator held that NY Holdings' inability to locate documents and witnesses involved in the charges at issue was not sufficient to warrant dismissal. In particular, the Administrator pointed out that all potential witnesses are subject to subpoena and documents were previously singled out by interrogatories and stored by defendant. Holding that claimants should not bear responsibility for the changes in ownership of the Daily News or defendant's inability to preserve its own documents, the Administrator rejected NY Holdings' argument that such prejudice should compel dismissal. We find that this determination was not an abuse of the Administrator's discretion. Moreover, we note that any prejudice suffered by the loss of documents and witnesses would likewise redound on claimants.

Finally, the Administrator found that previous indications by the Court of its desire to see pending matters resolved expeditiously did not constitute actual or implied notice to the LDF that further delay would result in dismissal. NY Holdings admits that the LDF was not expressly advised that its delay would result in dismissal. Moreover, statements by the Administrator and by this Court directing the parties to resolve pending matters "as quickly as possible," are not necessarily a warning that dismissal is imminent. Therefore, a determination by the Administrator that such statements did not put the LDF on notice was not an abuse of the Administrator's discretion.

In light of the broad discretionary powers entrusted to the Administrator, and the strong public policy in favor of deciding cases on the merits, we find his denial of NY Holdings' motion to dismiss Claim 230 to be reasonable under the circumstances surrounding the action. *Everest Management,* 466 F.Supp. at 171. On the other hand, however, we caution the LDF that any further delay in moving forward with discovery and/or progressing toward settlement may

well be sufficient grounds to support a dismissal of the claim under Rule 41(b).

## B. Rule 56(c)

■■■■ NY Holdings also moved before the Administrator for summary judgment based on the holding of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In that case, the Supreme Court held that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Therefore, the moving party need not support its motion with affidavits or other similar materials negating the opponent's claim. It is enough that it demonstrate the absence of a genuine issue of material fact for trial. *Id.* at 323, 106 S.Ct. at 2552–53. The party opposing the motion then must supply sufficient evidence, in the form of affidavits, depositions, interrogatories, etc., to demonstrate the existence of a genuine issue of material fact. *Id.* at 322, 106 S.Ct. at 2552.

■■ The Administrator analyzed claimants' assertions of discrimination under the theory of disparate treatment articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 1824 & n. 13, 36 L.Ed.2d 668 (1973). As the Supreme Court held therein, a *prima facie* case for discrimination under Title VII requires a showing that (i) the claimant belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons with the claimant's qualifications.[5] Citing various pages of the LDF's post-motion submission, the Administrator held that Hollington, Lavache, and Sandy made a *prima facie* showing that they

were discriminatorily denied adequate training; Hollington, Lavache, and Speights made a *prima facie* showing that they were discriminated against in the bidding process on the shape; and Hatton, Hollington, Khalifa, Lavache, Magloire, Roberts, and Speights made a *prima facie* showing that they were subjected to discriminatory discipline and other discriminatory treatment.

NY Holdings argues on this appeal that the Administrator erred in finding that the depositions and EEOC charges relied on by claimants in opposing its motion were sufficient to overcome its motion under the *Celotex* standard for three reasons. First, it asserts that much of the deposition testimony relates to events that occurred more than 300 days prior to the filing of the EEOC charges, and is thus statutorily barred from forming the basis of recovery under Title VII. 42 U.S.C. § 2000e–5(e)(1); *Scott v. Federal Reserve Bank of New York*, 704 F.Supp. 441, 449 (S.D.N.Y.1989). Second, NY Holdings contends that because many of the discriminatory instances cited in the post-motion submission are based on inadmissible hearsay, the LDF cannot rely on that testimony to defeat the instant motion under the principle articulated in *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 722 F.Supp. 1032, 1037 & n. 2 (S.D.N.Y.1989) (Conner, J.) (inadmissible deposition testimony may not be utilized to overcome motion for summary judgment). Finally, NY Holdings argues that the remaining admissible testimony relating to timely alleged discriminatory events fails to substantiate a *prima facie* case of discrimination.

Although the LDF and the Administrator fail to address either of NY Holdings' first two contentions, and the LDF offers little guidance in establishing how each particular instance to which it refers in its voluminous post-motion submission meets claimants' burden to establish a *prima facie* case, under the deference accorded the Administrator's rulings, we feel that the record adequately supports the Administrator's denial of sum-

---

5. We also note, as defendant points out, that a *prima facie* case may also consist of evidence that racial discrimination was a defendant company's "standard operating procedure—the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977).

mary judgment. In reviewing the Administrator's decision, we need not agree with his reasons for denying the motion. Instead, we need only examine whether the record as a whole supports his determinations. Based on such an examination of the record, we find that even accepting NY Holdings' first and second contentions as true, each claimant has substantiated a *prima facie* case of discrimination. Therefore, while we do not comment on every alleged instance of discrimination contained in the LDF's post-motion submission, nor on many of the Administrator's citations, we find that claimants have established a *prima facie* case and demonstrated the existence of genuine issues of material fact for trial.

NY Holdings does not dispute that the claimants each make general allegations of discrimination in assigning jobs, providing training, hiring foremen, and disciplining employees, which, if true, would constitute a violation of Title VII. Instead, NY Holdings argues that these general allegations alone are insufficient to overcome its motion and that the specific instances cited by claimants are either based upon inadmissible hearsay, barred by Title VII's 300–day limitations period, or both. While we agree that bald assertions of discrimination would be insufficient to meet claimants' *prima facie* burden, claimants have done more than that here.

■■■■ As articulated above, Rule 56(c) is designed as a legal check against unsubstantiated claims. Under the Rule, however, the court may not weight the facts before it, but merely determine, after drawing all reasonable inferences in favor of the non-moving party, whether a genuine issue of material fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's duty is confined to "issue-finding, not issue resolving." *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Said another way, to grant the mo-

tion the court must determine that, on the evidence then before it, no rational jury could find for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Claimants each assert that a general pattern of discrimination in job assignments, training, hiring foremen, and disciplining employees has disadvantaged minorities at the Daily News. They cite instances, many of which NY Holdings correctly points out occurred long before the EEOC charges were filed in 1987, illustrating the persistence of discrimination at the Daily News despite the existence of the recently terminated Consent Decree.

We agree with NY Holdings that if claimants base their discrimination claims solely on instances occurring outside the 300–day limitations period, or on instances substantiated solely by hearsay, the Administrator should have granted their Rule 56(c) motion. Claimants seek recovery not for any one instance of discrimination, however, but for a course of discriminatory conduct that has inhibited their advancement and reduced the remuneration that they receive at the Daily News. Claimants' general allegations, supported by timely specific examples, allege sufficient facts from which a reasonable factfinder could infer that claimants were the subject of discrimination during the statutory period.[6] Similarly, although we note that many claimants rely on hearsay to substantiate some of their discrimination claims, *see, e.g.,* Deposition of Robert Hatton, Jan. 26, 1990, Record on Appeal ("RoA"), at 796–802, claimants' general allegations and other specific instances apparently based on claimants' personal knowledge provide sufficient factual support to overcome defendant's motion.

For example, several claimants testified that the more desirable jobs were regularly given to less-senior non-minorities. Deposition of Robert Hatton, Jan. 26, 1990, RoA, at 794; Deposition of Floyd Hollington, Feb. 7, 1990, RoA, at 541, 600–601, 583–590, 614–616;

---

6. We are not completely convinced that claimants cannot rely on specific instances of discrimination that occurred outside the 300–day limitations period to support their charges. As this Court previously held, to the extent that untimely instances of discrimination illustrate an ongoing pattern, they may, under the appropriate circum-

stances, form the basis of an ultimate recovery. *See Drayton v. Veterans Administration,* 654 F.Supp. 558, 567 (S.D.N.Y.1987). We need not decide whether this so-called "continuing violation" exception applies here, however, because claimants have alleged sufficient timely discriminatory practices to overcome defendant's motion.

Deposition of Abdullah Khalifa, Jan. 17, 1990, RoA, at 1403–1407, 1408–1412; Deposition of Jack Lavache, Jan. 23, 1990, RoA, at 1194–95, 1218–19, 1259, 1268, 1274–75, 1281; Deposition of Clifford Magloire, Jan. 24, 1990, RoA, at 1007, 1004–1005, 1059, 1067, 1069, 1072; Deposition of Calvin Sandy, Dec. 18, 1989, RoA, at 709, 714; Deposition of Malcolm Stokes, Jan. 22, 1990, RoA, at 399–403. Although the LDF offers no documentary, non-hearsay proof that the preferentially treated non-minorities were, in fact, less senior than claimants, and thus not entitled to perform the work that they were awarded, claimants' testimony to this fact is sufficient to raise a genuine issue for trial. Since the Court is not free on this motion to probe the basis for or truth of claimants' assertions, we must assume, for purposes of this motion, that those assertions are sufficiently grounded in personal knowledge to rebut defendant's motion.[7]

Moreover, we are reluctant to grant summary judgment, a drastic provisional remedy, when claimants, members of a class of employees with limited educational backgrounds and resources, have each testified to an ongoing practice of job discrimination that ultimately may require proof of defendant's intent. *Gallo*, 22 F.3d at 1224. While some specific instances are clearly based on hearsay, others, notably those cited above, may be considered for purposes of this motion and are sufficient to satisfy claimants' *prima facie* burden. Taking claimants' testimony as a whole and drawing the proper inferences in claimants' favor, we find that whether discrimination in assigning jobs at the Daily News persisted during the relevant period is a question of fact that cannot be resolved on this motion. Because the alleged job discrimination cited above would have affected all claimants herein, each claimant has established a cause of action under Title VII.

Therefore, without commenting on every alleged discriminatory instance referred to in claimants' post-motion submission, or on the other instances relied on by the Administra-tor below, we merely hold that the testimony referred to above and other similar testimony raises genuine issues of fact that the Administrator must address in a more formal evidentiary hearing. In light of these issues, the Administrator did not abuse his authority in denying summary judgment to NY Holdings.

## CONCLUSION

We hold that the Administrator did not abuse his discretion in denying defendant's motion to dismiss Claim 230 for want of prosecution. In addition, because genuine issues of material fact persist, the Administrator properly denied defendant's motion for summary judgment. For the reasons stated above, the Administrator's decision dated September 20, 1994 is affirmed.

**SO ORDERED.**

---

7. NY Holdings argues that because, in most of the instances of discrimination cited by claimants, they offer no basis for their knowledge of the treatment or qualifications of others at the Daily News, we must assume that their knowl-edge is based on hearsay. Drawing all reasonable inferences in claimants' favor as required, we do not agree. Indeed, the basis of claimants' knowledge is an issue of fact that we are not in a position to resolve on this motion.