**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**DIMENSIONAL ENTERTAINMENT CORPORATION, et al., Defendants.**

No. 77 Civ. 5290 (CHT).

United States District Court, S. D. New York.

Jan. 8, 1981.

See also, D.C., 493 F.Supp. 1270.

Stephen L. Hammerman, Regional Administrator Securities and Exchange Commission, New York City, for plaintiff; Michael T. Gregg, George A. Schieren, Ralph A. Siciliano, Richard Wender, New York City, La Brena Jones, of counsel.

Golenbock & Barell, New York City, for defendant Sam Ford; David A. Ross, New York City, of counsel.

## OPINION

TENNEY, District Judge.

In an Opinion dated July 16, 1980, the Court found defendant Sam Ford guilty of violating various registration and antifraud provisions of the federal securities laws. 493 F.Supp. 1270 (S.D.N.Y.1980). The factual and legal background of this action was fully described in that prior Opinion and will not be repeated here. At that time, the Court granted the Securities and Exchange Commission's ("SEC") request for a disgorgement order and referred the matter to Magistrate Naomi R. Buchwald for an accounting. The Court, however, denied the SEC's request for a permanent injunction against Ford's committing further violations of the securities laws. The Court concluded that the SEC had not demonstrated a "realistic likelihood" that such violations would recur, *see SEC v. Monarch Fund*, 608 F.2d 938, 943 (2d Cir. 1979), because the agency had "not even addressed the question of Ford's present incarceration pursuant to an eight year prison sentence." 493 F.Supp. at 1278. Accordingly, the SEC was given sixty days from the entry of that Opinion to discuss this issue and to submit additional evidence

regarding the likelihood that Ford will repeat his unlawful conduct. The SEC has complied with that directive and the Court is satisfied that the standard for injunctive relief has been met. A permanent injunction should therefore be entered enjoining Ford from violating sections 5(a), 5(c), and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rules 10b–5 and 10b–6, 17 C.F.R. §§ 240.10b–5 and 240.-10b–6 thereunder.

*Injunctive Relief*

▋ While the SEC is clearly authorized to seek injunctive relief to prevent future violations of the securities laws, 15 U.S.C. §§ 77t(b), 78u(d), the Second Circuit has noted that "the current judicial attitude . . . has become more circumspect" and that "recent decisions have emphasized . . . the need for the SEC to go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence." *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99–100 (2d Cir. 1978). Factors that should be considered in determining whether an injunction is appropriate include: "the likelihood of future violations, the degree of scienter involved, the sincerity of defendant's assurances against future violations, the isolated or recurrent nature of the infraction, defendant's recognition of the wrongful nature of his conduct, and the likelihood, because of defendant's professional occupation, that future violations might occur." *SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1048 (2d Cir. 1976). A district court is vested with considerable discretion in determining whether an injunction should be issued in a particular case. *Id.* at 1048; *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972).

After examining the specifics of Ford's case in light of these principles, this Court's prior Opinion stated that "the risk posed by a potential violator with an unexpired prison term exceeding six years is not sufficient to warrant injunctive relief." 493 F.Supp. at 1278. The Court thus granted the SEC

additional time to address this issue and to demonstrate that "the likelihood of further violations is a real probability and not a distant prophecy." *Id.* at 1279. Responding to these statements, the SEC contends

that the mere existence of a long prison term should not in itself form the basis of a denial of injunctive relief. This is particularly so where, as here, all of the other indicia bearing upon the defendant's propensity to violate the law are clearly evident. Although the Commission has obtained additional evidence . . . which indicates that defendant Ford will not in fact be serving the full additional six years of his prison term—as the Court assumed in its initial determination—this factor should not be the overriding consideration in the determination of injunctive relief.

Plaintiff's Supplemental Memorandum at 7.

The Court agrees that the length, or mere fact, of Ford's prison sentence should not be the overriding consideration in determining injunctive relief, just as such a determination should not turn solely on the occurrence of previous violations. Resolution of this question requires careful examination of each of the factors described above and the interplay between these elements. As recently stated by the Third Circuit in *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980), a case relied upon by the plaintiff, "a court makes a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed."

Initially, the SEC argued that injunctive relief was warranted by virtue of Ford's previous infractions, the willfulness of his actions, and the key role that he played in the stock scheme underlying his present conviction. While these factors are undoubtedly critical, the Court considered it inappropriate to entirely ignore the fact that Ford is currently serving an unexpired prison term of more than six years. The additional evidence now presented by the SEC, discussed below, addresses other relevant concerns, including: Ford's access to

the marketplace in the near future, his failure to recognize the wrongfulness of his actions, the lack of assurance against repeated misconduct, and the likelihood that Ford's occupation may facilitate future violations. See Plaintiff's Supplemental Memorandum at 9, 10, 13, 14. The Court therefore disagrees with defendant's argument that "all of the factual material set forth" by the SEC was "known to this Court and even commented upon in its decision of July 16, 1980." Defendant's Supplemental Memorandum at 4. Contrary to defendant's rather colorful assertion, the SEC is not engaging in "a wishful flight of fantasy" without "even gossamer proof." Id. at 3, 5. The agency has now demonstrated a "realistic likelihood" that Ford's violations will recur and injunctive relief is warranted.

*The SEC's Additional Evidence*

Plaintiff's additional evidence consists of an affidavit executed by a Parole Commission Analyst and a transcript of Ford's parole hearing. Each will be discussed in turn.

The SEC has submitted an affidavit executed by the Chief Case Analyst for the National Appeals Board of the United States Parole Commission. Affidavit of Linda Wine Marble, sworn to August 28, 1980. This affidavit describes Ford's parole status. Ford's optimum parole eligibility date was computed to be May 21, 1981, based on his sentence length and Parole Board guidelines. On December 6, 1979, Ford had his initial parole hearing and the examiner panel recommended that Ford be granted a presumptive parole for May 22, 1981. After this decision was reviewed in the Regional Office, the Administrative Hearing Examiner requested that the Regional Commissioner grant Ford a parole date for January 22, 1982. The Regional Commissioner concurred and this became the effective decision of the Commission. Ford appealed the Regional Commissioner's decision to the National Appeals Board. The appeal was denied. Therefore, Ford's final presumptive parole date is January 22, 1982. Plaintiff's Reply Memorandum at 2.

In contrast to its previous request for injunctive relief, the SEC has now provided concrete evidence indicating that Ford is likely to be released from custody in about *one* year. Ford, in turn, contends that his parole "is not a certainty and may not, in fact, be granted." Defendant's Supplemental Memorandum at 3. To use the defendant's phrase, however, this sounds a bit like a flight of fantasy, albeit not very wishful. Under Parole Commission guidelines, an inmate is generally released on his presumptive parole date unless he violates prison rules or engages in disruptive conduct. 28 C.F.R. § 2.34. Ford's excellent conduct record and his obvious desire for an early release make it unlikely that he would jeopardize his parole eligibility by misconduct.

Ford also disagrees with the SEC's contention that he will be under no restraints after he is paroled. According to defendant's counsel, the conditions imposed on his parole "will undoubtedly include a prohibition against any stock market activity by Ford during the term of the parole and any violation of that condition would send Ford back to prison for the balance of his parole term." Defendant's Supplemental Memorandum at 3. An injunction is therefore not needed because the Parole Commission will exercise its supervisory powers during Ford's parole term. As dramatically stated by Ford's counsel, "[d]ouble-harnessing a defendant is oppressive and supererogatory and hardly necessary for effective law enforcement in the public interest." *Id.* at 4. In the Court's view, the defendant's "double-harness" argument puts the cart before the horse. While the Parole Commission is authorized to prescribe prohibitory conditions, 18 U.S.C. § 4203(a); 28 C.F.R. § 2.40, it would be presumptuous to speculate on what action the Commission might take at the time Ford is released, particularly since his presumptive parole date did not include any such conditions. See 28 C.F.R. § 2.40. Furthermore, even if such conditions were imposed, a violation would not automatically result in Ford's return to prison. Violation of an injunction, on the other hand, can subject Ford to criminal contempt proceedings and confinement. The two, in short, are hardly synonymous.

The SEC's second piece of additional evidence is the transcript of Ford's parole hearing which was held on December 6, 1979. The defendant contends that disclosure of this document violates the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"), and Parole Commission Rules, 28 C.F.R. §§ 2.1 to 2.59. The Court disagrees. While the Privacy Act restricts the disclosure of information by a federal agency, the transcript at issue here falls within at least one, and possibly more, of the statutory exemptions. For example, section 552a(b)(3) permits the disclosure of an agency record for a "routine use" which is published in the Federal Register. One routine use published by the Parole Commission, which expressly encompasses "transcripts or tapes of hearings," provides that a Parole Commission record "may be disclosed to a Federal, State or local agency maintaining civil, criminal or other relevant information if necessary to obtain information relevant to an agency decision relating to current or former inmates under supervision." 43 Fed.Reg. 30,140–41 (July 13, 1978). Similarly, section 552a(b)(7) provides that an agency record may be released to another agency "for a civil or criminal law enforcement activity" if the activity is legally authorized and the head of the agency requests the information in writing. The SEC has informed the Court that it asked the Parole Commission to release the transcript to assist its attempt to secure injunctive relief against Ford. The transcript of Ford's parole hearing is thus admissible as evidence for this purpose and its disclosure does not violate the Privacy Act or Parole Commission Rules.

At the parole hearing, Ford was questioned about his employment history, skills, and occupation. He stated that at the time he was incarcerated, he had been serving as the "general manager of some large factories abroad which were owned by an American company. I was also a theatrical producer." Tr. at 8. He also stated that he has a license in both insurance and real estate and that he was "going to college to brush up on my real estate license." *Id.* He was uncertain whether he would return to New York City after his release and mentioned that his mother lived in California and his sister lived in Florida. He was confident, however, that he would "come up with an acceptable plan" by the time he was released.

Ford was also questioned about the particulars of his crime and his sentence. He stated that he was never an officer or director of the company involved in this case and that "he had nothing to do with officially doing any of those acts." *Id.* at 4. Ford was asked about the wide disparity between his eight year sentence and the much lighter sentences imposed on other people involved in this securities scheme. He responded that the others "were merely people who could contribute something to the government's case." *Id.* at 6. He continued, "I think the disparity merely lies in the fact that I felt my innocence. I still do." *Id.* Ford then went on to explain that he thought the judge at his criminal trial had tried to push the case through too quickly and that he was sentenced before certain letters on his behalf were received. According to defendant's counsel, Ford "feels there was a personality conflict between the judge and himself and this is what possibly ended in him getting such a large sentence." *Id.* at 7.

Two salient facts are revealed by the transcript of Ford's parole hearing. First, it is likely that Ford will continue to work in fields, such as business, real estate, or insurance, that may facilitate participation in fraudulent securities schemes. And with all due respect to New York, California, and Florida, it appears that Ford intends to locate in an area where such schemes frequently prosper. The Court is *not* suggesting that Ford has any intention whatsoever of resuming his erstwhile ways or engaging in criminal conduct. Yet these factors are important in evaluating Ford's access to the marketplace and "the likelihood, because of defendant's occupation, that future violations might occur." *SEC v. Universal Major Indus. Corp., supra,* 546 F.2d at 1048. And these concerns become even more substantial when considered in conjunction with Ford's history of repeated violations and the willfulness of his conduct.

The second important fact demonstrated by Ford's statements at the hearing is that he either fails to recognize the wrongful nature of his conduct or cannot sincerely assure that such violations will not be repeated. *See id.; cf. SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18–19 (2d Cir. 1977) (injunction not warranted where defendant was "a sincere and honest man, who, out of an excessive zeal for fairness and accuracy, in an agitated moment, temporarily abandoned his usual caution and allowed material information to 'pop out.' [Defendant] was terribly upset by his error, and candidly expressed this."). Again, this is not to suggest that Ford is incapable of rehabilitation or disinclined to mend his former ways. The Court, however, must consider Ford's attitude toward his crime and his propensity toward acting in a similar fashion in the future. These concerns weigh in favor of injunctive relief.

*Conclusion*

For the reasons discussed above, the SEC's motion for injunctive relief is granted. A permanent injunction shall be entered restraining Ford from committing further violations of the securities laws provisions discussed herein.

Submit judgment on notice.

So ordered.